OPINION
{¶ 1} Plaintiffs-Appellants Marilyn Ponser, Administrator of the Estate of Wanda Chenault, et al., appeal from the June 24, 2002, Judgment Entry of the Licking County Court of Common Pleas granting summary judgment to defendants-appellees.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 10, 1999, Wanda Chenault was killed when the vehicle that she was operating was struck by a vehicle operated by Charles Hofer. Hofer, who was convicted of vehicular homicide, had no insurance. The decedent was survived by her husband (David Chenault), her two minor children, her father, her mother (appellant Marilyn Ponser), her maternal aunt (appellant Jeanette Romine), and her maternal grandparents (appellants Verlin and Freda Mathis).
 {¶ 3} At the time of the accident, the decedent was insured under a motor vehicle policy issued by Grange Insurance Company. Grange Insurance paid its uninsured [UM] policy limits of $25,000.00 to the decedent's Estate. In addition, at the time of the accident, appellant Marilyn Ponser was insured under an automobile insurance policy issued by appellee Motorists Mutual Insurance Company which contained UM/UIM limits of $100,000.00 per person/$300,000.00 per accident and appellants Verlin and Freda Mathis were insured under a policy issued by appellee Motorists Mutual which contained UM/UIM limits of $100,000.00 per person/$300,000.00 per accident. Moreover, appellant Jeanette Romine was insured under an automobile insurance policy issued by appellee Nationwide Insurance Company with UM/UIM limits of $500,000.00 per person/occurrence.
 {¶ 4} At the time of her death, the decedent was employed by the Longaberger Company. The Longaberger Company is the insured under a commercial automobile insurance policy issued by appellee St. Paul Fire and Marine Insurance Company with UM/UIM limits of $1,000,000.00. The Longaberger Company also had in effect an umbrella policy issued by appellee Fireman's Fund Insurance Company which included UM/UIM coverage with limits of $1,000,000.00 per accident.
 {¶ 5} On November 15, 1999, appellant Marilyn Ponser, as Administrator of the Estate of Wanda Chenault, demanded the limits of the St. Paul policy in the amount of $975,000.00.[1] However, on December 14, 1999, appellee St. Paul denied such claim.
 {¶ 6} Thereafter, On January 19, 2000, appellant Marilyn Ponser, as Administrator of the Estate of Wanda Chenault, filed a complaint (Case No. 00 CV 00051) against St. Paul Fire and Marine Insurance Company and Fireman's Fund Insurance Company seeking UM coverage. Subsequently, on June 5, 2000, appellants Jeanette Romine and appellants Marilyn Ponser and Verlin and Freda Mathis each made written claims against their respective automobile insurance policies seeking UM coverage.
 {¶ 7} On June 7, 2001, appellants Marilyn Ponser, individually, and Verlin and Freda Mathis filed a complaint (Case No. 01 CV 0501) against appellee Motorists Mutual Company seeking UM coverage under their respective policies. Shortly thereafter, on June 7, 2001, appellant Jeanette Romine filed a complaint (Case No. 01 CV 000502) against appellee Nationwide Insurance Company. As memorialized in a Judgment Entry filed on January 9, 2002, the trial court consolidated all three cases.
 {¶ 8} Thereafter, appellants, on March 22, 2002, filed a Motion for Summary Judgment. On the same date, appellee Fireman's Fund Insurance Company filed a Motion for Summary Judgment. Such appellee, in its motion, argued that appellants' claims were barred since appellants were not "legally entitled to recover from the tortfeasor" since appellants never had filed suit against Charles Hofer the tortfeasor, and the two year statute of limitations for wrongful death claims had run. Appellee Fireman's, in its motion, further alleged that the ambiguity found by the Ohio Supreme Court in Scott-Pontzer v. Liberty Mut. Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116, was not present since its policy included individuals as insureds and that the Fireman's Fund's policy was an excess policy "which requires that all underlying insurance be exhausted before Fireman's Fund must make any payment." In addition, on the same date, appellee St. Paul Fire and Marine Insurance Company filed a Motion for Summary Judgment. Appellee St. Paul, in its motion, argued, in part, as follows:
 {¶ 9} "First, Defendant St. Paul is in compliance with the guidelines set forth in Scott-Pontzer. As recognized in Scott-Pontzer, `in drafting abstracts of insurance, insurers must do so with language that is clear and unambiguous and that supports the requirements of the law' supra, 664. Here, St. Paul's policy provides clear and unambiguous coverage effectively insuring Mr. Longaberger and his family members for bodily injury and the Longaberger Company for property damage. Accordingly, the Supreme Court's reasoning in Scott-Pontzer [sic] inapplicable to the instant case.
 {¶ 10} "Secondly, even if Plaintiff's are deemed by operation of law as insureds. [sic] The destruction of St. Paul's subrogation rights based upon the failure of Plaintiffs to institute an action against the tortfeasor prohibits a recovery of uninusured motorist benefits.
 {¶ 11} "Based on the reasons set forth above, St. Paul Fire And Marine Insurance Company hereby moves this Honorable Court to grant summary judgment in St. Paul's favor, as Plaintiffs are not insureds under the St. Paul policy, by its terms or under Scott-Pontzer and in the alternative, are not legally entitled to recover from an uninsured motorist."
 {¶ 12} Thereafter, on April 2, 2002, appellee Nationwide Mutual Insurance Company filed a Motion for Summary Judgment, arguing that "because the Plaintiff (Jeannette Romine) is no longer legally entitled to recover against the tortfeasor Charles Hofer since a lawsuit was not filed against Hofer within the applicable two-year statute of limitations, the Plaintiff is unable to recover under the uninsured motorist portion of her policy, " Six days later, appellee Motorist Mutual Insurance Company filed its Motion for Summary Judgment, also contending that appellants Marilyn Ponser and Verlin and Freda Mathis were not entitled to UM benefits under their respective policies since their failure to timely file suit against the tortfeasor made them no longer legally entitled to recover from the tortfeasor and had prejudiced Motorist's subrogation rights.
 {¶ 13} Pursuant to a Judgment Entry filed on May 16, 2002, the trial court denied appellees' Motions for Summary Judgment, finding that "no proper affidavit or other form of evidence pursuant to Civ.R. 56 has been submitted demonstrating Mr. Hofer [the tortfeasor] was uninsured and has no assets, and/or indicating that some action or no action has been taken against him which would demonstrate whether or not Plaintiffs have complied with the two year statute of limitations." The trial court, in its May 16, 2002, entry, further stated, in relevant part, as follows:
 {¶ 14} "As a final note, with regard to the umbrella policy issued by Defendant Fireman's, Plaintiffs concede the policy provides excess coverage. Accordingly, to the extent Defendant Fireman's Motion for Summary Judgment seeks a declaration that the umbrella policy affords only excess coverage, if any, such Motion is granted."
 {¶ 15} In response to the trial court's May 16, 2002, entry, appellees filed renewed Motions for Summary Judgment that incorporated Civ.R. 56 materials. Subsequently, as memorialized in a Judgment Entry filed on June 24, 2002, the trial court granted appellees' renewed Motions for Summary Judgment, holding, in part, as follows:
 {¶ 16} " By not including Mr. Hofer as a tortfeasor, or separately filing suit against Mr. Hofer prior to June 10, 2001, the Plaintiffs have failed to fulfill a substantive element of their wrongful death causes of action, and those causes of action extinguished on June 10, 2001. Accordingly, Plaintiffs are not legally entitled to recover damages from the tortfeasor, and therefore are precluded by law from receiving UM benefits under the policies, and R.C. 3937.18."
 {¶ 17} It is from the trial court's June 24, 2002, Judgment Entry that appellants now appeal, raising the following assignment of error:
 {¶ 18} "THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTIONS FOR SUMMARY JUDGMENT."
 {¶ 19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civil Rule 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support is claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264.
 {¶ 20} It is based upon this standard we review appellants' assignment of error.
 I {¶ 21} Appellants, in their sole assignment of error, argue that the trial court erred in granting appellees' Motions for Summary Judgment. We agree.
 {¶ 22} Appellants specifically maintain that the trial court erred in holding that appellants were not "legally entitled to recover" from Charles Hofer, the tortfeasor, since they failed to file suit against Hofer before the expiration of the two year statute of limitations for wrongful death actions and that appellants were, therefore, precluded from receiving uninsured motorist benefits. Appellees, in turn, argue that appellants' claims are barred because they cannot meet the mandatory precondition to uninsured motorist coverage that the insured be "legally entitled to recover" from the operator of an uninsured vehicle, as required by R.C. 3937.18(A), and because the St. Paul and subject insurance policies require that an insured by "legally entitled to collect" from an uninsured motorist.
 {¶ 23} The relevant version of R.C. 3937.18(A) states, in relevant part, as follows: "Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.[2]
 {¶ 24} "For purposes of division (A)(1) of this section, an insured is legally entitled to recover damages if the insured is able to prove the elements of the insured's claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle. The fact that the owner or operator of the uninsured motor vehicle has an immunity under Chapter 2744 of the Revised Code or a diplomatic immunity that could be raised as a defense in an action brought against the owner or operator by the insured does not affect the insured's right to recover under uninsured motorist coverage. However, any other type of statutory or common law immunity that may be a defense for the owner or operator of an uninsured motor vehicle shall also be a defense to an action brought by the insured to recover under uninsured motorist coverage." (Emphasis added).
 {¶ 25} Under Ohio case law, the phrase "legally entitled to recover" means that the insured must be able to prove the elements of his or her claim. Ohayon v. Safeco Ins. Co. of Illinois, 91 Ohio St.3d 474,484, 2001-Ohio-100, 747 N.E.2d 206, citing Kurent v. Farmers Ins. ofColumbus (1991), 62 Ohio St.3d 242, 245, 581 N.E.2d 533, 536.
 {¶ 26} The trial court, in its June 24, 2002, Judgment Entry, specifically held that appellants were not legally entitled to recover damages from Charles Hofer, the tortfeasor, since "[b]y not including Mr. Hofer as a tortfeasor, or separately filing suit against Mr. Hofer prior to June 10, 2001, two years after Wanda Chenault's death[3], the Plaintiffs have failed to fulfill a substantive element of their wrongful death causes of action, and those causes of action extinguished on June 10, 2001." In short, the trial court expressly found that the two year limitations on actions was a substantive element in a wrongful death action under R.C. 2125.02, the wrongful death statute and that, since appellants failed to satisfy such element, they could not prove their cause of action.
 {¶ 27} As is stated above, R.C. 3937.18(A) requires that a person seeking uninsured motorists coverage be "legally entitled" to recover damages. We find, however, that such phrase, as used in the statute, is ambiguous since the statute does not specify at what point in time the determination of whether an insured is legally entitled to recover damages from the owner or operator of an uninsured vehicle is to be made.
 {¶ 28} If, in determining whether appellants are legally entitled to recover damages, we consider the date on which the accident occurred, then appellants were "legally entitled to recover damages." At such point in time, appellants could prove both liability and damages. See Sumultv. Allstate Ins. Co. (1984), 12 Ohio St.3d 294, 466 N.E.2d 544. Because of ambiguity in the statute as to when the insured must be legally entitled to recover," and because R.C. 3937.18 is a remedial statute to be liberally construed to give effect to the remedy it provides, the fact that appellants did not seek uninsured motorists coverage until after the expiration of the two year statute of limitations contained within R.C.2125.02(d), does not serve as a basis to deny such coverage.
 {¶ 29} We also find that the appellants were not precluded from UM coverage based on the policy language. In the case sub judice, the policy issued by appellee St. Paul to the Longaberger Company states, in relevant part, that St. Paul will "pay damages you and other persons protected under this agreement are legally entitled to collect from theowner or driver of an uninsured or underinsured vehicle " (Emphasis added). Similar language is contained in the polices issued by appellees Fireman's Fund, Nationwide, and Motorists Mutual.
 {¶ 30} While we recognize that some courts, including the Fourth District Court of Appeals in Hutchison v. Midwestern Indemn. Co. (Aug. 5, 1987), Ross App. No. 1352, and Hutchison v. Midwestern Indemn. Co. (March 2, 1989), Ross App. No. 1496, cited by appellees, have held that an appellant who failed to bring a wrongful death action against the tortfeasor within the two year statute of limitations was no longer "legally entitled to recover damages" from the tortfeasor, we agree with the reasoning of the Second District Court of Appeals in Ohio FarmersIns. v. Binegar (Jan. 7, 1994), Montgomery App. No. 13906. In Binegar, the insurance company argued that Laurie Binegar, Administrator of the Estate of Delbert Binegar, was not entitled to UIM coverage since Binegar had failed to bring a wrongful death action against the tortfeasor within the two year time limit provided in the wrongful death statute. The trial court agreed and, for such reason, found that the Estate of Delbert Binegar was not legally entitled to collect from the insurance company since it had allowed the wrongful death claim against the tortfeasor to lapse due to the passage of time.
 {¶ 31} However, the Court of Appeals, in Binegar, reversed the trial court, holding, in relevant part, as follows: "We note that the 4th District Court of Appeals has construed the phrase "legally entitled to recover" to exclude an insured who fails to file a wrongful death action within the statutory period. Hutchinson v. State Automobile MutualInsurance Co. (August 5, 1987), Ross App. No. 1304, unreported; andHutchinson v. Midwestern Indemnity Co. (August 5, 1987), Ross App. No. 1352, unreported.
 {¶ 32} "The policy requirement that an insured must be "legally entitled to recover damages" is reasonably susceptible of at least two interpretations: (1) that the insured's legal entitlement to recover damages against the tortfeasor is a condition of the accrualof a claim under the policy; or (2) the insured's legal entitlement to recover damages against the tortfeasor is a condition of the assertion of a claim under the policy. Under the former interpretation, Binegar was legally entitled to recover damages against the tortfeasor upon the decedent's death, so that at that point a claim accrued under the policy. Under the latter interpretation, Binegar could have asserted a claim under the policy immediately following the decedent's death, but lost the ability to assert a claim once it became too late to file a wrongful death action against the tortfeasor.
 {¶ 33} "Both interpretations are plausible. The first is more consistent with the basic concept of underinsured motorist coverage as a means of insuring the collectibility of liability against a tortfeasor in a motor vehicle accident. The second would be a way of providing the insurer with notice of a claim while there is still a possibility of recovering damages from the tortfeasor. However, the provision is not worded in language suggestive of a purpose of assuring notice.
 {¶ 34} "Where terms of an insurance contract are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. Kingv. Nationwide Insurance Co. (1988), 38 Ohio St.3d 208." Id at 4. (Emphasis added.) The court, in Binegar, held that the term `legally entitled to recovery of damages" was reasonably susceptible to more than one interpretation and that there was no language in the subject insurance policy clearly and unambiguously putting the insured on notice that it established a time limit within which to make a claim for UIM benefits. The Court found that the language in the policy did not clearly and unambiguously reduce from fifteen years[4] to two years the time in which an action for UIM benefits on the contract at issue could be brought. For such reason, the Court, in Binegar, held that the insured was not barred from recovery. See also Hatcher v. Grange Mut. Cas. Co. (Dec. 14, 1993), Franklin App. No. 93AP-882.
 {¶ 35} In the case sub judice, the subject insurance policies do not define the phrase "legally entitled to recover damages" and do not indicate when the insured must be "legally entitled to recover damages" from the tortfeasor. The policy "does not even contain a provision which purports to limit the time for bringing a claim for uninsured motorist coverage." See Hatcher, supra. at 3. Applying Binegar, we find that the policies, therefore, are ambiguous. Pursuant to King, supra., such ambiguity must be construed in favor of appellants. Construing such ambiguity in appellants' favor, we find that appellant's legal entitlement to recover damages against the tortfeasor was a condition of the accrual of a claim under the insurance policies. Therefore, appellants were legally entitled to recover damages against Charles Hofer, the tortfeasor, upon the decedent's death, "so that at that point a claim accrued under the policy." See Binegar, supra. At such point in time, appellants were able to demonstrate the elements of their claim against the tortfeasor and were "legally entitled to recover." Based on the foregoing, we find that appellants were not barred from pursuing their UM claims against appellees even though they did not timely file a cause of action against the tortfeasor.
 {¶ 36} Having found that appellant's claims are not time barred, we must next look at the individual insurance policies to determine if appellants were entitled to UM coverage under the same.
 {¶ 37} The first policy for consideration is the commercial automobile insurance policy issued by appellee St. Paul Fire and Marine Insurance Company to the Longaberger Company, the decedent's employer. As is stated above, appellee Marilyn Ponser, as the Administrator of the Estate of Wanda Chenault, is seeking UM coverage under such policy.
 {¶ 38} The declarations page of such policy lists the Longaberger Company as the insured. Such policy also contains a UM/UIM endorsement which states, in relevant part, as follows: "You are protected. Also, if you are named in the introduction as an individual, you and your family members are protected persons." Pursuant to Scott Pontzer v. LibertyMut. Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116, and its progeny, we find that the "you" portion of the definition of an "insured" includes employees of the Longaberger Company. While appellee St. Paul argues that because, in addition to the Longaberger Company, a corporation, the policy also names David Longaberger, an individual, as an insured the policy language is not ambiguous and, therefore,Scott-Pontzer does not apply, we disagree. In the recent case of Burkhartv. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903, this Court held that the rationale announced by the Ohio Supreme Court inScott-Pontzer is applicable to policies which list both the corporation and also specific individuals as insureds. In Burkhart, we noted if the policies were only intended to afford coverage to the specific individuals named, then the inclusion of the corporation as a named insured would be superfluous. Likewise in the case sub judice, if the St. Paul policy was intended to only insure David Longaberger, then the Longaberger Company, the corporation, would not have been named as an insured. In other words, "you" still includes the corporation. And, pursuant toScott-Pontzer, the corporation cannot suffer bodily injury. Therefore, the corporation's employees must be included as insureds in order to make sense in the context of UM/UIM coverage. Accordingly, we find that Wanda Chenault, the decedent, was an insured under the St. Paul policy issued to the Longaberger Company, her employer.
 {¶ 39} The next issue for determination is whether appellant Marilyn Ponser, as Administrator of Wanda Chenault's Estate, complied with the subrogation provision in the St. Paul policy. Appellee St. Paul specifically asserts that said appellant's failure to protect St. Paul's subrogation interests deprived her of UM/UIM coverage under such policy.
 {¶ 40} The St. Paul policy provides, in the UM/UIM endorsement, in relevant part, as follows:
 {¶ 41} "What To Do If You Have A Loss. You must promptly notify the police if an unidentified driver hits you or another protected person and you must promptly send us copies of any legal papers if a suit is brought. In the case of a settlement between a protected person and an insurer of an underinsured vehicle, the protected person must promptly notify us in writing of the settlement. Then we must be allowed 30 days to pay the amount of the settlement to the protected person. This will preserve our right to recovery. (Emphasis added)"
 {¶ 42} While appellee St. Paul does not argue that appellant Marilyn Ponser, as Administrator, failed to timely notify it of the accident[5], appellee St. Paul maintains that appellant Marilyn Ponser, as Administrator, breached the above subrogation provision in its policy by failing to institute the wrongful death action until after the two year statute of limitations for wrongful death actions had expired.
 {¶ 43} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, 781 N.E.2d 927, paragraph two of the syllabus. As noted by the Court in Ferrando "In cases involving the alleged breach of consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." Ferrando, supra. at 208.
 {¶ 44} In the case sub judice, we find that appellant Marilyn Ponser, as Administrator, did not breach the subrogation provision contained in the St. Paul insurance policy. As is stated above in the facts, the accident in this matter occurred on June 10, 1999. On November 15, 1999, appellant Marilyn Ponser, as Administrator, presented St. Paul with a claim and demanded the limits of the St. Paul policy in the amount of $975,000.00. Thereafter, the complaint in this matter was filed on January 15, 2000, — — before the two year limitation for wrongful death actions expired on June 9, 2001. Despite having notice of the claim for UM coverage via the November 15, 1999, demand, appellee St. Paul never requested that appellant Marilyn Ponser commence legal action against Charles Hofer, the tortfeasor, nor did appellee St. Paul act to join Hofer as a party to this action. As is stated above, the St. Paul policy required appellant Marilyn Ponser, as Administrator, to send St. Paul copies of legal papers if a suit was brought against the tortfeasor. However, the policy did not require such appellant to file suit against Hofer. Based on the foregoing, we find that appellant Marilyn Ponser, as Administrator, did not breach the subrogation provision in the St. Paul Insurance policy and that such appellant was entitled to UM coverage under the same.
 {¶ 45} The next policy for consideration is the Fireman's Fund umbrella policy issued to the Longaberger Company. The issue before this Court is whether such policy provided excess or primary UM/UIM coverage. The trial court, in its May 16, 2002, entry, specifically found that such policy provided excess coverage.
 {¶ 46} In Pillo v. Strickland (Feb. 5, 2001), Stark App. No. 2000 CA 0201, this Court stated as follows in reviewing umbrella coverage:
 {¶ 47} _¶ 17_ "An umbrella policy is defined as a policy which "provides excess coverage beyond an insured's primary policies."Midwestern Indent. Co. v. Craig (1995), 106 Ohio App.3d 158, 164. See also Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos. (1995),102 Ohio App.3d 708. Umbrella policies are different from standard excess insurance policies in that they are meant to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage). American Special Risk Ins. Co. v. A-Best Products,Inc. (1997), 975 F. Supp. 1019, 1022. "The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to "drop down" to provide primary coverage for situations where the underlying insurance provides no coverage at all." Id."
 {¶ 48} In determining whether the Fireman's Fund umbrella policy provides excess or primary coverage in the case sub judice, we must look to the language of the policy. The Fireman's Fund policy states, in "Section 1. Excess Liability — Coverage A" as follows:
 {¶ 49} "COVERAGE A — INSURING AGREEMENT
 {¶ 50} "1. We will pay on behalf of any Insured those sums in excess of Primary Insurance that any Insured becomes legally obligated to pay as damages or a Covered Pollution Cost or Expense. Provided that such damages and Covered Pollution Cost or Expense:
 {¶ 51} "a. Are covered by Primary Insurance;
 {¶ 52} "b. Arise from injury or damage during our Policy Period; and
 {¶ 53} "c. Take place anywhere in the world.
 {¶ 54} "2. The terms and conditions of Primary Policies apply to Coverage A, unless they are inconsistent with any provision of this policy.
 {¶ 55} "3. The amount we will pay is limited as described in Limits of Insurance."
 {¶ 56} The Uninsured-Underinsured Motorist Coverage Endorsement further provides, in relevant part, as follows:
 {¶ 57} "A. SECTION I, EXCESS LIABILITY — COVERAGE A, A. COVERAGE A — INSURING AGREEMENT, is amended to include the following:
 {¶ 58} "We will pay all sums in excess of Primary Insurance any Insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle, arising from bodily injury during our Policy Period.
 {¶ 59} The Fireman's Fund policy defines the term "Primary Insurance" as meaning the "policy or policies of insurance shown in our Schedule of Primary insurance." Since the St. Paul policy is listed on the Schedule of Primary Insurance, the Firemans Fund policy provides excess UM/UIM coverage for claims covered by the St. Paul policy.
 {¶ 60} Appellee Fireman's, in its brief, argues that appellant Marilyn Ponser, as Administrator of the Estate of Wanda Chenault, is not entitled to UM coverage under the Fireman's policy since the underlying St. Paul policy lists David Longaberger, an individual, as an insured in addition to the Longaberger Company. Appellee Fireman's notes that, pursuant to the terms of its policy, anyone who is an insured under the underlying St. Paul policy is also an insured under the policy issued by appellee Fireman's Fund. However, as is discussed above, the inclusion of a named individual in addition to the corporation does not remove theScott-Pontzer ambiguity. Therefore, employees are insured under the UM/UIM portion of the St. Paul policy.
 {¶ 61} Furthermore, the Fireman's Fund policy requires the insured to "enforce any right upon our request." Such policy does not require the insureds to bring suit against a tortfeasor. Despite having notice of the UM claims at the latest on or about January 19, 2000, when the complaint was filed, appellee Fireman's Fund did not request that appellants either sue the tortfeasor or join the tortfeasor as a party. Accordingly, we find that appellant Marilyn Ponser, as Administrator of the Estate of Wanda Chenault, is entitled to excess UM coverage under the Fireman's Fund policy.
 {¶ 62} The final policies for consideration are the personal automobile insurance policies issued by appellees Motorists Mutual Insurance Company and Nationwide Insurance Company. As is stated above, appellee Motorists Mutual issued a personal automobile insurance policy to Marilyn Ponser, individually, and a separate policy to appellants Verlin and Freda Mathis. In turn, appellee Nationwide Insurance Company issued an automobile insurance policy to appellant Jeanette Romine. The above appellants are seeking UM coverage under the UM/UIM endorsements to their respective automobile insurance policies.
 {¶ 63} Pursuant to R.C. 2125.01 and 2125.02(A)(1), in an action for wrongful death, the surviving statutory beneficiaries have the right to recover damages suffered by reason of the wrongful death of the decedent. See Sexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431, 433 N.E.2d 555 and Moore v. State Farm Auto InsuranceCo., 88 Ohio St.3d 27, 2000-Ohio-264, 723 N.E.2d 97.
 {¶ 64} While appellees Motorists Mutual and Nationwide do not argue that appellants breached the notice provisions in their respective policies, both argue that appellants Marilyn Ponser, Verlin and Freda Mathis and Jeanette Romine are not entitled to UM coverage under their respective policies since they breached the subrogation provisions contained in the same. The Motorists Mutual policies state, in relevant part, as follows:
 {¶ 65} "PART E — DUTIES AFTER AN ACCIDENT OR LOSS
 {¶ 66} "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
 {¶ 67} "A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses
 {¶ 68} "C. A person seeking uninsured motorist coverage must also:
 {¶ 69} "1. Promptly notify the police if a hit and run driver is involved.
 {¶ 70} "2. Promptly send us copies of the legal papers if a suit is brought. (Emphasis added.)"
 {¶ 71} In turn, the Nationwide policy provides, in pertinent part, as follows:
 {¶ 72} "1. The insured must:
 {¶ 73} "(a) Submit written proof of the claim to us
 {¶ 74} "2. After notice of claim, we may require the insured to take legal action against any liable party.
 {¶ 75} "3. An insured may bring legal action against the other party for bodily injury. A copy of any paper served in this action must be sent to us at once.
 {¶ 76} "4. The insured must:
 {¶ 77} "(a) Obtain our written consent to:
 {¶ 78} "(1) Settle any legal action brought against any liable party; pr
 {¶ 79} "(2) Release any liable party.
 {¶ 80} ("b) Preserve and protect our right to subrogate against any liable party." (Emphasis added)."
 {¶ 81} As is stated above, while the accident in the case sub judice occurred on June 10, 1999, appellees Nationwide and Motorists Mutual were presented with written claims for UM coverage on June 5, 2000. As noted by appellants in their brief, there is no evidence in the record that either appellee Nationwide or appellee Motorists Mutual, despite knowledge of the UM claims over a year before the two year limitation on wrongful death actions would have expired, ever made any request that appellants commence a lawsuit against Charles Hofer, the tortfeasor. Nor is there evidence that appellee Motorists Mutual attempted to compel the joinder of Hofer prior to the expiration of the two year limitation on wrongful death action. Moreover, as is evidenced by the policy language cited above, there is no requirement in either the Nationwide or Motorist Mutual policies that appellants file suit against Hofer. For the foregoing reasons, we find that appellants Marilyn Ponser, Verlin and Freda Mathis, and Jeanette Romine did not breach the subrogation provisions in their respective policies and that they are entitled to UM coverage under the same.
 {¶ 82} Based on the foregoing, we find that the trial court erred in granting appellees' Motions for Summary Judgment.
 {¶ 83} Appellants' sole assignment of error is, therefore, sustained.
 {¶ 84} Accordingly, the judgment of the Licking County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
By: Edwards, J., Hoffman, P.J., and Boggins, J. concur.
[1] Such figure represents the $1,000,000.00 in UM coverage under the St. Paul policy less the $25,000.00 received from Grange Insurance Company.
[2] R.C. 3937.18(A)(2) does not contain a requirement that an individual be "legally entitled to recover" damages from the driver or operator of a motor vehicle before being entitled to underinsured motorist benefits. Such statute states as follows: "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
[3] ¶ 85 R.C. 2125.02(D) provides that "[a]n action for wrongful death shall be commenced within two years after the decedent's death."
[4] Revised Code 2305.06 provides that an action upon a written contract shall be brought within fifteen years after the cause thereof accrued.
[5] As is stated above, while the accident occurred on June 10, 1999, appellee St. Paul was notified of the same on November 15, 1999.