MIDWESTERN INDEMNITY COMPANY, Appellee and Cross–Appellant,

v.

CRAIG et al.; Appellants and Cross–Appellees.*

GORDON et al., Appellants and Cross–Appellees,

v.

GRE INSURANCE GROUP, d.b.a. Midwestern Indemnity Group, Appellee and Cross–Appellant.

[Cite as *Midwestern Indemn. Co. v. Craig* (1995), 106 Ohio App.3d 158.]

Court of Appeals of Ohio,
Third District, Allen County.

Nos. 1–95–2, 1–95–3.

Decided Aug. 30, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1513, 659 N.E.2d 1289.

*David K. Frank* and *David I. Shroyer*, for appellants and cross-appellees Craigs and Gordon.

*Lane, Alton & Horst* and *Karen K. Rosenberg*, for appellee and cross-appellant Midwestern Indemnity.

---

HADLEY, Judge.

This is an appeal from the judgment entries rendered by the Allen County Court of Common Pleas in two declaratory judgment actions pertaining to the availability of underinsured motorist coverage to Jeffrey Gordon ("Gordon") under various insurance policies issued by appellee, GRE Insurance Group, d.b.a. Midwestern Indemnity Company ("GRE").

In case No. 1–95–3, appellants, Gordon and Carol and Gerald Craig, Gordon's mother and stepfather ("appellants"), filed a complaint, seeking declaratory relief, on November 17, 1993. An amended complaint was filed on December 13, 1993. GRE filed an answer on December 27, 1993. In case No. 1–95–2, GRE filed a complaint for declaratory judgment on November 18, 1993. On December 13, 1993, appellants filed an answer.[1]

---

1. These cases were consolidated for trial and declaratory judgment.

Both claims arise from an automobile accident on April 21, 1991 in which Gordon, a passenger in a car driven by Scott Beach ("Beach"), was injured. Beach was insured for $100,000 per person by State Farm Mutual Automobile Insurance Company ("State Farm") As settlement of the claim, Gordon accepted $100,000 from State Farm.

Because his injuries exceeded $100,000, however, Gordon applied for underinsured benefits under the various insurance policies which were in effect at the time of the accident. The first GRE policy was a family car policy, number 101473167, in which Gordon was the named insured ("Gordon policy"). The policy limit was $100,000 per person and $300,000 per accident. A second GRE family car policy, number 101432147, was issued to Gerald Craig ("Craig policy") and had the same above-mentioned limits.[2] A third GRE policy, number 201147179, consisted of a homeowner's policy ("homeowner's policy") with Gerald Craig as the named insured. Finally, the Craigs had a personal umbrella supplement ("umbrella") with a $1 million coverage limit.

A trial commenced on October 24, 1994. In its judgment entries of December 16, 1994, the trial court made the following declarations:

"(1) Jeffrey Gordon qualifies for underinsured motorist coverage under Policy No. 101473167;

"(2) Jeffrey Gordon is an insured under Policy No. 101432147;

"(3) Jeffrey Gordon does not qualify for underinsured motorist coverage under Policy No. 101432147;

"(4) Jeffrey Gordon does not qualify for coverage under the Homeowner's Policy No. 201147179;

"(5) Jeffrey Gordon does not qualify for coverage under the Personal Umbrella Supplement[.]"

On January 13, 1995, appellants filed their notice of appeal regarding the trial court's third, fourth, and fifth findings. GRE filed a notice of cross-appeal on January 20, 1995 regarding the trial court's first finding. This court, upon motion, ordered consolidation of these cases on January 23, 1995.

■■■ Appellants raise the following assignments of error:

Assignment of Error No. 1

"The trial court erred, to the prejudice of the appellants, in holding that appellant Jeffrey Gordon does not qualify for underinsured motorist insurance

---

2. The insurance agent testified that no claim was made under this policy until the declaratory action was filed.

coverage under the Craig 'Family Car Policy' [Policy No. 101432147] with GRE Insurance Group, dba The Midwestern Indemnity Company, and rendering judgment accordingly, even though he is an insured [3] under that policy."

Appellants specifically maintain that the Craig policy contains no antistacking language and that language that does appear in the endorsement is unenforceable.[4] Appellants' other assertions relate to the umbrella and will be discussed in conjunction with the second assignment of error.

■ R.C. 3937.18(A)(2) mandates the offering of underinsured motorist coverage. R.C. 3937.18(G) provides that "[a]ny automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section may include terms and conditions that preclude stacking of such coverages."

---

**3.** GRE, in its brief, asserts that Gordon fails to qualify as an insured person under the Craig policy. That particular finding was not included in GRE's notice of cross-appeal. Nonetheless, the record supports the trial court's declaration that Gordon qualified as an insured.

Words in an insurance policy "must be given their plain and ordinary meaning." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88, overruled in part on other grounds, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. Furthermore, if language in an insurance contract is open to more than one meaning, the court will give it a liberal construction in favor of the insured. *Id.*

The policy states that an insured person includes a relative, defined, in pertinent part, as "a person living in *your* household, related to *you* by blood * * *." There is no definition of household in the policy. GRE proposed a definition of household which focused on persons living in the same dwelling. See *Shear v. West Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 166, 11 OBR 478, 481, 464 N.E.2d 545, 548. But, see, *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 528 N.E.2d 968 (holding that a household resident means one living in the home with "some * * * regularity, although not necessarily there permanently, but excludes a temporary or transient visitor").

The trial court, citing Black's Law Dictionary (6 Ed.Rev.1990) 708, defined household as " '[a] family living together * * *. Generally, the term household as used in automobile policies is synonymous with home and family (Citations omitted).' " Furthermore, the court, again citing Black's, at 604, noted that the term family was " ' * * * not confined to those who stand in a legal or blood relationship, but rather should include those who live within the domestic circle of, and are economically dependent on, the named insured * * *. (Citations omitted).' "

The trial court concluded that the term "living in your household" was susceptible of different meanings and found that Gordon was an insured under the policy. In support of its determination, the court found Mrs. Craig provided support to Gordon, a full-time college student, consisting of tuition payments, car insurance, medical care, rent, utilities, clothes, books, and food. Gordon was also a dependent on the Craigs' income tax. Furthermore, Gordon had a room at the home and returned to the home on numerous weekends and various college recesses. We agree with these findings.

**4.** Appellants, in their brief, state that Gordon is only "seeking payment * * * under: (1) his GRE auto policy *or* the Craig Family Car Policy * * * *and* (2) the Umbrella (providing $1 million in coverage)." Although the trial court found that Gordon qualifies for insurance under his own policy, this issue still needs to be addressed since GRE's cross-appeal concerns the eligibility of Gordon to recover under the Gordon policy.

In the case at bar, the underinsured motorist amendment is listed on the declarations of the Craig policy and the amendment itself is labeled as "amendments of policy provisions."[5] The amendment states: "There shall be no stacking of the limit(s) of liability shown in the Declarations and that amount is the maximum amount *we* will pay for all damages for bodily injury from any one accident," without regard to the number of claims, insured persons, or separate premiums charged for coverage of different vehicles.[6]

These clauses, which are permitted by R.C. 3937.18(G), are unambiguous in communicating the insurer's limits of liability. We reject, therefore, appellants' contention that there is no antistacking language in the policy.

■ Next we address the enforceability of the antistacking clauses and the trial court's finding that Gordon's claim under the Craig policy constituted intrafamily stacking.

Again, R.C. 3937.18(G) allows an insurance company to include antistacking language in its policies. In *Savoie v. Grange Mut. Ins. Co.*, 67 Ohio St.3d at 500, 620 N.E.2d at 810, paragraph two of the syllabus, the Supreme Court of Ohio found that "[i]nsurers may contractually preclude intrafamily stacking—the stacking of uninsured/underinsured limits of policies and coverages purchased by family members living in the same household."[7] The court further stated that intrafamily stacking results "when an individual or an entire family is insured by several separate uninsured/underinsured policies insuring different vehicles. When the individual or a family member is injured by an uninsured or underinsured motorist, he or she will try to combine, or stack, each of the policies' underinsurance limits to compensate the injured individual." Id. at 506, 620 N.E.2d at 814.

In the instant case, the trial court found that Gordon was entitled to recover under his own policy. Thus, it concluded that recovery under the Craig policy would be precluded as intrafamily stacking. We agree that recovery under both policies would be precluded as intrafamily stacking. We do not address, however, as it was not raised, whether Gordon could choose to recover under the Craig policy instead of the Gordon policy.

---

**5.** The policy also provides:
   "TWO OR MORE CARS INSURED
   "With respect to an *accident* to which this and any other auto policy *we* issue to *you* applies, the total limit of *our* liability under all the policies shall not exceed the highest applicable limit of liability under any one policy." (Emphasis *sic*.)

**6.** This amendment is also included in the Gordon policy.

**7.** R.C. 3937.18(G) was amended on October 20, 1994 and contains language permitting clauses which bar all policy stacking.

Appellant's first assignment of error is overruled.

Assignment of Error No. 2

"The trial court erred, to the prejudice of appellants, in holding that 'Jeffrey Gordon does not qualify for coverage under the Personal Umbrella Supplement' and rendering judgment accordingly, even though the court found him to be insured under the 'Family Car Policy' which GRE has admitted is supplemented by the Umbrella."

Appellants set forth several assertions regarding the umbrella. First, they contend that the umbrella applies to both the Craig policy and the homeowner's policy. Appellants next maintain that any antistacking language (if enforceable) in the basic policy has no application to the umbrella. Lastly, appellants assert that the exclusionary language in the umbrella is contrary to R.C. 3937.18.

Interpretation of insurance policies is generally analyzed by applying rules of contract law. *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d at 89, 545 N.E.2d at 88. For example, where sections of a policy are plain and unambiguous, a court may not substitute a different meaning. *Id.* On the other hand, language which is ambiguous "must * * * be liberally construed in favor of the claimant who seeks coverage." *Id.*

An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies. 3 Widiss, Uninsured and Underinsured Motorist Insurance (2 Ed.1995) 23, Section 32.5. If such a policy includes automobile liability coverage, it "must [also] comport with R.C. 3937.18." *Duriak v. Globe Am. Cas. Co.* (1986), 28 Ohio St.3d 70, 72, 28 OBR 168, 170, 502 N.E.2d 620, 622, overruled in part on other grounds, *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317. See, also, *House v. State Auto. Mut. Ins. Co.* (1988), 44 Ohio App.3d 12, 14, 540 N.E.2d 738, 740.

Initially, we must ascertain whether the umbrella attaches to the Craig policy and, if so, whether it provides underinsured motorist coverage. The trial court found that the umbrella attached only to the homeowner's policy and since Gordon was ineligible for coverage under that policy,[8] he was, in turn, ineligible for coverage under the umbrella. Furthermore, the court found that even if Gordon was eligible, an exclusionary clause in the umbrella barred recovery.

The declarations of the homeowner's policy include the umbrella, and the declarations of the Craig policy list the umbrella as a related policy. The umbrella schedule also lists automobile liability insurance as one of the basic

---

8. We note the trial court's statement that the parties raised no issue regarding the availability of coverage under the homeowner's policy.

insurance policies. In addition, the claims representative of GRE testified that the umbrella could attach to either policy. More specifically, the claims representative answered in the affirmative to the trial court's question whether the umbrella "provide[d] coverage over and above the limits of the auto policy."

The umbrella policy provides, in pertinent part:

"2. When Uninsured or Underinsured Motorists Coverage is provided by the Automobile Liability Insurance policy included in the Schedule, *we* will:

"a. provide the same coverage for bodily injury caused by uninsured or underinsured motorists as is included in such *basic policy,* and

"b. pay an amount up to *our* limit of liability shown in Item 3 of the Schedule, provided the limit of the *basic policy's* Uninsured or Underinsured Motorists Coverage is equal to the bodily injury liability limit provided by such *basic policy.*[9]

"However, *we* will not pay any claims for bodily injury caused by an uninsured or underinsured motorist until the limit of liability of such *basic policy* has been exhausted, nor will *we* pay more than *our* limit of liability shown in Item 3 of the Schedule." (Emphasis *sic.*)

Upon review of the record, we find that the umbrella is excess coverage for both the Craig policy and the homeowner's policy and that underinsured motorist coverage is provided for in the umbrella. Nevertheless, the issue of whether it is available to an insured needs to be determined.

■ Restrictions in an insurance policy which alter the statutory requirements of R.C. 3937.18 are unenforceable. *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 399, 583 N.E.2d 309, 311. Furthermore, "R.C. 3937.18(A)(1) and (2) are premised on the tortfeasor's *legal liability* to the injured insured." (Emphasis added.) *Id.* at 400, 583 N.E.2d at 312. Thus, any attempt to ignore that liability is also an attempt to evade the coverage mandated by R.C. 3937.18. *Id.*

■ In the instant case, the following exclusionary language appears in the umbrella policy: "This Supplement does not provide any coverage for claims or legal actions for: * * * [i]*njury* to any *insured person.*"[10] (Emphasis *sic.*) As stated above, the trial court determined that this language barred recovery to

---

9. The bodily injury liability in the Craig policy is also $100,000 each person and $300,000 each accident.

10. Insured person includes *"relatives* who live with *you."* (Emphasis *sic.*) Relative is defined as "a person living in *your* household related to *you* by blood, marriage or adoption and includes a ward or foster child." (Emphasis *sic.*)

any insured and since Gordon was an insured, he would be prevented from recovering under the umbrella. We disagree.

The provision eliminates recovery to an insured for underinsurance coverage. As discussed above, this contravenes the purpose of R.C. 3937.18. We find, therefore, appellants' second assignment of error well taken.

GRE presents the following cross-appeal:

"The trial court erred by holding that the automobile insurance contract between appellee Midwestern Indemnity Company and appellant Jeffrey Gordon affords underinsured motorists coverage to appellant for claims arising out of his April 21, 1991 automobile accident; pursuant to O.R.C. § 3937.18, the $100,000 limit of appellant's policy must be reduced by the $100,000 paid to appellant by the tortfeasor's insurer, and no coverage is therefore afforded."

Appellee declares that since Gordon received $100,000 from State Farm, which was also the limit in the Gordon policy, he is prohibited from receiving the underinsured motorist coverage afforded by that policy.

In *Savoie v. Grange Mut. Ins. Co.*, 67 Ohio St.3d at 508, 620 N.E.2d at 815, the insurance company argued that the insureds were not entitled to recover under their underinsurance policy limits of $100,000 per person and $300,000 per occurrence since these amounts were the same as the tortfeasor's policy limits; therefore, "the tortfeasor was not underinsured." This was the result in *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658. The court, in *Savoie*, making reference to R.C. 3937.18, expressly overruled this decision and held that "underinsured motorists who suffer from injuries caused by an automobile accident are entitled to collect up to the full limits of their underinsurance policy to the extent that their *damages* exceed the amounts which the tortfeasor's insurer has already paid to them." [11] (Emphasis added.) *Savoie*, 67 Ohio St.3d at 508–509, 620 N.E.2d at 815. This position has been reaffirmed in *Newman v. United Ohio Ins. Co.* (1994), 68 Ohio St.3d 170, 624 N.E.2d 728, motion for reconsideration denied (1994), 69 Ohio St.3d 1204, 631 N.E.2d 157.[12]

In the instant case, the Gordon policy provides for $100,000 per person and $300,000 per accident underinsured motorists coverage. Beach's insurance policy also had a $100,000 liability limit. Additionally, the parties stipulated that Gordon's damages exceeded $100,000. Hence, pursuant to *Savoie, supra,* the

---

11. The October 1994 amendments to R.C. 3937.18 change this result.

12. In a concurring opinion, Justice Douglas states his concurrence in *Savoie, supra,* and his current belief is that *Savoie* mandates setoff, but that the setoff is against the insured's damages, not the policy limits. *Id.*

trial court did not err in finding that Gordon is entitled to underinsured motorist coverage under his own policy.

GRE's cross-assignment of error is overruled.

In summary, the judgment of the trial court is affirmed as to appellant's first assignment of error and appellee's cross assignment of error, but reversed, in accordance with this opinion, as to appellant's second assignment of error.

*Judgments affirmed in part,*
*reversed in part,*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.