OPINION
{¶ 1} Appellant The Cincinnati Insurance Company (CIC) appeals the November 21, 2001, summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of Appellee American Family Insurance (AFI) declaring that CIC's commercial umbrella liability policy "drops down" to provide primary UM/UIM coverage and in finding that the "other insurance" clause is unenforceable when UM/UIM coverage is imposed by operation of law.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 19, 2001, plaintiff Mike Rudish was involved in a motorcycle-automobile accident with defendant Richard Jennings, an uninsured motorist.
 {¶ 3} At the time of the accident, Plaintiff was insured under a policy of insurance issued by AFI with a limit of $50,000.00. Said policy provided UM/UIM coverage. It is undisputed that this coverage is direct and primary.
 {¶ 4} Plaintiff was employed by Gentzler Tool Die Corp. which carried various policies of insurance through CIC including a general liability policy, a personal umbrella liability policy and a commercial umbrella liability policy.
 {¶ 5} It is undisputed that UM/UIM coverage is imposed under the commercial umbrella liability policy by operation of law.
 {¶ 6} The trial court found, and AFI did not dispute, that Plaintiff was not entitled to coverage under the commercial general liability policy or the personal umbrella liability policy.
 {¶ 7} As to the remaining commercial umbrella liability policy, the trial court found such to provide primary UM/UIM coverage in the amount of $4 million, the amount of its liability limits.
 {¶ 8} It is undisputed that Plaintiff was not acting in the course and scope of his employment when the accident occurred.
 {¶ 9} Appellant assigns a single error to the trial court:
 ASSIGNMENT OF ERROR {¶ 10} "The Trial Court Erred In Denying The Motion For Summary Judgment Of Defendant-appellant, The Cincinnati Insurance Company, As To Its Commercial Umbrella Liability Policy Of Insurance."
 SUMMARY JUDGMENT STANDARD {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) states in pertinent part:
 {¶ 12} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 13} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1966), 75 Ohio St.3d 280.
 {¶ 14} It is based upon this standard we review appellants' sole assignment of error.
 I. {¶ 15} The issue before this court is whether the UM/UIM coverage imposed by operation of law in CIC's commercial umbrella liability policy is primary with coverage contained in AFI's policy or whether such is excess coverage.
 {¶ 16} In Pillo v. Strickland (Feb. 5, 2001), Stark App. No. 2000 CA 0201, we reviewed umbrella coverage, wherein we stated:
 {¶ 17} "An umbrella policy is defined as a policy which "provides excess coverage beyond an insured's primary policies." MidwesternIndemn. Co. v. Craig (1995), 106 Ohio App.3d 158, 164. See also ClevelandBuilders Supply Co. v. Farmers Ins. Group of Cos. (1995),102 Ohio App.3d 708. Umbrella policies are different from standard excess insurance policies in that they are meant to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage). American Special Risk Ins. Co. v. A-Best Products,Inc. (1997), 975 F. Supp. 1019, 1022. "The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to "drop down" to provide primary coverage for situations where the underlying insurance provides no coverage at all." Id."
 {¶ 18} In determining whether the CIC umbrella policy is excess or primary coverage in the case sub judice, we must look to the language of the policy which states:
"A. Insuring Agreement
"We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance" or for an "occurrence" covered by this policy which is either excluded or not covered by "underlying insurance" because of :
1."Bodily injury" or "property damage" covered by this policy occurring during this policy period and caused by an "occurrence"; or
2."Personal injury" of "advertising injury" covered by this policy. . . .
* * *"
 {¶ 19} The CIC umbrella policy defines "underlying insurance" as "the policies of insurance listed in the Schedule of Underlying Policies and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that his policy covers." (See Policy U.S. 101 P. 07 97, Page 13 of 15).
 {¶ 20} The "underlying policies" listed in the Schedule of Underlying Policies on the declarations page are the commercial general liability policy, the automobile liability policy, the employee benefit liability policy/employer's liability Ohio policy.
 {¶ 21} Additionally, Plaintiff's own policy with AFI would also be an underlying policy because it is "insurance available to the insured under all other insurance policies applicable to the "occurrence".
 {¶ 22} Therefore, CIC's umbrella policy would only be required to "pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance", the "underlying insurance" being the AFI policy.
 {¶ 23} We therefore find the AFI policy to provide primary UM/UIM coverage and the CIC umbrella policy to provide excess UM/UIM coverage.
 {¶ 24} Having found same, we do not need to address the "other insurance" issue raised by Appellant.
 {¶ 25} Appellant's sole assignment of error is sustained.
 {¶ 26} For the above reasons, we reverse the decision of the Stark County Court of Common Pleas.
By: Boggins, J., Hoffman, P.J. dissents, and Edwards, J. concurs separately.