JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiffs-appellants[1] ("Frazier") appeals from the judgment of the trial court, which granted summary judgment in favor of defendants-appellees Employers Fire Insurance Company ("Employers Fire"), Commercial Union Insurance Company ("Commercial Union") Pacific Employers Insurance Company ("Pacific"), and CIGNA Insurance Company ("CIGNA"). For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} The facts in this case are undisputed. On December 6, 1999, Megan Frazier was a passenger in a vehicle she owned when the driver lost control of the car and drove across the median into oncoming traffic. Megan was killed in the accident that followed.
 {¶ 3} On September 20, 2000, Frazier filed suit seeking underinsured motorist benefits under policies issued to them and under policies issued to the employers of William and Sally Frazier. We discuss only those policies relevant on appeal. William Frazier's employer, Gorbett Enterprises of Solon dba Great Lakes Cold Storage ("Great Lakes") was issued a business auto policy by Employers Fire and an umbrella policy by Commercial Union.
 {¶ 4} Sally Frazier was employed by Applied Industrial Technologies, which carried a business auto policy issued by Pacific and an umbrella policy issued by CIGNA. After cross motions for summary judgment were filed, the trial court granted summary judgment on December 23, 2002 in favor of Employers Fire, Commercial Union, Pacific Employers and CIGNA.
 {¶ 5} It is from this ruling that Frazier now appeals, asserting four assignments of error for our review:
 {¶ 6} "I. The trial court erred in granting summary judgment in favor of Employers Fire Insurance Company and denying appellants' motion for summary judgment."
 {¶ 7} "II. The trial court erred in granting summary judgment in favor of Commercial Union Insurance Company and denying appellants' motion for summary judgment."
 {¶ 8} "III. The trial court erred in granting summary judgment in favor of Pacific Employers Insurance Company and denying appellants' motion for summary judgment."
 {¶ 9} "IV. The trial court erred in granting summary judgment in favor of CIGNA Insurance Company and denying appellants' motion for summary judgment."
 {¶ 10} We address together all four assignments of error which challenge the trial court's decision to grant summary judgment against Frazier regarding all four policies at issue. We will address each policy in turn.
 {¶ 11} We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996 Ohio 336; Zemcik v. La Pine Truck Sales Equipment
(1998), 124 Ohio App.3d 581, 585. In order for summary judgment to be properly rendered, it must be determined that:
 {¶ 12} "(1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. See, also, State ex rel. Zimmerman v. Tompkins
(1996), 75 Ohio St.3d 447, 448. The burden of establishing that there are no genuine issues of material fact to be litigated is upon the party moving for summary judgment. Turner v. Turner (1993), 67 Ohio St.3d 337,340. If the moving party meets this burden, the non-moving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. State ex rel. Zimmermanv. Tompkins, supra.
Employer's Fire Business Auto Policy Commercial Union Umbrella Policy
 {¶ 13} William Frazier, Sr. worked for Gorbett Enterprises of Solon, dba Great Lakes Cold Storage ("Great Lakes"). Employers Fire issued a business auto policy to Great Lakes which was in full force and effect at the time of Megan's fatal accident. The Business Auto Declarations Form listed the only named insured as: "Great Lakes Cold Storage." The policy provided for $1 million in uninsured/underinsured ("UM/UIM") coverage. The endorsement defined an insured as follows:
 {¶ 14} "WHO IS AN INSURED:
 {¶ 15} "1. You
 {¶ 16} "2. If you are an individual, any `family member'.
 {¶ 17} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'. The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 18} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured'."
 {¶ 19} Frazier contends that Megan Frazier was an insured under business auto policy on the authority of Scott-Pontzer v. Liberty MutualInsurance Company (1999), 85 Ohio St.3d 660, 1999-Ohio-292.
 {¶ 20} In Scott-Pontzer, the Supreme Court of Ohio was faced with the issue of whether "an employee * * * was an insured for purposes of underinsured motorist coverage" pursuant to a policy that was issued to the claimant's employer, Superior Dairy. The policy language in that case stated, in relevant part:
 {¶ 21} "B. Who is an Insured
 {¶ 22} "1. You.
 {¶ 23} "2. If you are an individual, any family member."
 {¶ 24} The Court held that "where a commercial auto policy issued to a corporation defined the named insured as `you' and `if you are an individual, any family member,'" such policy language was ambiguous. The Court further found that because a corporation cannot occupy an automobile or suffer from bodily injury, it was meaningless to limit protection solely to the corporation. The Court therefore found that "you" included employees of the corporation.
 {¶ 25} The policy language in this case is identical to that inScott-Pontzer. Therefore "you" includes William Frazier, Sr. as an employee of Great Lakes and, under paragraph two of that definition, his family members. Ezawa v. Yasuda Fire Marine Ins. Co. of Am.,86 Ohio St.3d 557, 1999-Ohio-124. We therefore conclude that Megan Frazier was an insured under the policy. We turn now to whether Megan was entitled to coverage under the policy as an insured.
 {¶ 26} The UM coverage form contains, inter alia, the following policy exclusion:
 {¶ 27} "This insurance does not apply to:
 {¶ 28} "5. `Bodily Injury' sustained by:
 {¶ 29} "b. Any `family member' while `occupying' or when struck by any vehicle owned by that `family member' that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form;"
 {¶ 30} The parties agree that a covered "auto" is defined in relevant part to include: "OWNED `AUTOS' ONLY". Only those `autos' you own * * *. This includes those `autos' you acquire ownership of after the policy begins."
 {¶ 31} Frazier first contends that Megan suffered bodily injury while in a "covered auto" and therefore, coverage must be extended. We disagree. This court has already determined that when "you" is ambiguous in an insurance policy, as in this case, a consistent reading of "you" will be applied throughout the policy. Addie v. Linville, Cuyahoga App. Nos. 80547 and 80916, 2002-Ohio-5333; See also De Uzhca v. Derham, Montgomery App. No. 19106, 2002-Ohio-1814; Mazza v. Am. Cont'l Ins. Co., 2003-Ohio-360. As such, we note that such an interpretation would arguably allow for coverage to extend to William Frazier, Sr. ("you") driving an auto he owned, as an employee of Great Lakes. However, we follow this court's precedent and find that the absence of any "family member" language in the "owned `autos' only" definition of the policy precludes a finding that Megan was riding in a covered auto at the time of her fatal accident. Ibid.
 {¶ 32} Frazier's next contention is that the other owned auto exclusion exceeds the scope of R.C. 3937.18 and is therefore unenforceable. Specifically, Frazier argues that the statute authorizes insurance companies to exclude UM/UIM coverage for other owned vehicles which are "owned by, furnished to or available for the regular use of anamed insured, a spouse or a resident relative of a named insured." [Emphasis added.] It follows, he argues, that the other owned policy exclusion is unenforceable with regard to Frazier because Megan Frazier was simply an "insured" rather than "named insured." We find Frazier's argument unpersuasive.
 {¶ 33} R.C. 3937.18, as amended in H.B. 261, effective September 3, 1997, states, in relevant part:
 {¶ 34} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 {¶ 35} "(1) While the insured is operating or occupying a motor vehicle by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided"
 {¶ 36} In this case, the Business Auto Coverage Form states that "throughout this policy, the words `you' and `your' refer to the Named Insured shown in the Declarations." The named insured on the declarations reads Gorbett Enterprises of Solon, Inc. dba Great Lakes Cold Storage. In applying the term consistently, "you" would necessarily include any employee, including William Frazier, Sr. Frazier argues that Megan Frazier was not a "you" because she was not an employee of Great Lakes. Frazier is correct when he argues that Megan Frazier is not a "you" under the policy and therefore, not a named insured under the policy.
 {¶ 37} While this court has not specifically ruled on Frazier's argument, we have implicitly rejected such a notion in Addie, supra. InAddie, this court precluded coverage for an insured relative who was driving a motorcycle he owned, thereby implicitly finding the other owned auto exclusion valid and enforceable under R.C. 3937.18(J)(1). Addie,supra.; Cf. Collier v. Citizens Ins. Co. of Am., Cuyahoga App. No. 80852, 2002-Ohio-6499. (dicta in concurring opinion, suggesting a distinction between a named insured and insured so that the other owned auto exclusion would be invalid and unenforceable.)
 {¶ 38} A cardinal rule of statutory construction provides that courts must strive to avoid absurd or unreasonable results. Mishr v. Bd.of Zoning App. (1996), 76 Ohio St.3d 238, 240, 1996 Ohio 400,667 N.E.2d 365. We find that interpreting the statute as Frazier suggests would produce absurd and unreasonable results. Under Frazier's theory, the other owned auto exclusion as applied to William Frazier, Sr. would be valid and enforceable and coverage would be denied, but the opposite would result as applied to an insured relative, i.e Megan Frazier. It would be nonsensical to conclude that the more tenuous the relationship between an insurance company and an insured, the greater the coverage afforded.
 {¶ 39} Furthermore, it is well settled that "contracts are to be interpreted so as to carry out the intent of parties, as that intent is evidenced by contractual language." Skivolocki v. E. Ohio Gas Co.
(1974), 38 Ohio St.2d 244 paragraph one of the syllabus. Insurance coverage is determined by reasonably construing the contract "`in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" Kingv. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211; Dealers DairyProducts Co. v. Royal Ins. Co. (1960), 170 Ohio St. 336, paragraph one of the syllabus. Where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract. Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 168.
 {¶ 40} The insurance contract in this case demonstrates the general intent of the company was to limit its liability for all insureds while driving autos which were not covered under the policy. Certainly, the insurance company did not contemplate providing greater coverage for an omnibus insured than a named insured under the policy. We therefore reject Frazier's argument and find that the other owned auto exclusion is valid and enforceable.
 {¶ 41} Regarding the Commercial Union Umbrella Policy, coverage exists when the "`insured' becomes legally obligated to pay as damages in excess of `underlying insurance' * * *." Because the exclusion bars coverage under the Employer's Fire policy, it also bars coverage under the Commercial Union Umbrella Policy.[2]
Pacific Policy
 {¶ 42} Sally Frazier worked for Applied Industrial Technologies, Inc. ("Applied Industrial"). Pacific issued a business auto policy to Applied Industrial which was in full force and effect at the time of Megan's fatal accident. The Business Auto Declarations Form listed the only named insured as: "Applied Industrial Technologies, Inc." The policy provided for $2 million in uninsured/underinsured ("UM/UIM") coverage. The endorsement defined an insured as follows:
 {¶ 43} "B. WHO IS AN INSURED:
 {¶ 44} "1. You
 {¶ 45} "2. If you are an individual, any `family member'.
 {¶ 46} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'. The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 47} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured'."
 {¶ 48} We conclude that Megan Frazier was an insured under the Pacific policy. Ibid. We turn now to whether Megan was entitled to coverage under the policy.
 {¶ 49} The UM coverage form contains, inter alia, the following policy exclusion:
 {¶ 50} "This insurance does not apply to:
 {¶ 51} "3. `Bodily Injury' sustained by:
 {¶ 52} "b. Any `family member' while `occupying' or when struck by any vehicle owned by that `family member' that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form;"
 {¶ 53} The parties agree that a covered "auto" for purposes of UM/UIM coverage is defined as:
 {¶ 54} "Only those `autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those `autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirements." Only those `autos' you own * * *. This includes those `autos' you acquire ownership of after the policy begins."
 {¶ 55} Frazier contends that the exclusion attempts to preclude coverage to family members for injuries occurring in vehicles owned by the family members which are not covered autos. The exclusion in this policy is similar to that of the Employers Fire policy in that only autos owned by "you" are covered autos. Therefore, the exclusion precludes coverage for Megan's accident, who was in an automobile that she owned at the time of the accident.
 {¶ 56} Frazier next maintains that the exclusion is unenforceable because it purports to extend UM coverage to a class of vehicles that does not exist in Ohio, namely autos that, by law, "are required to have and cannot reject Uninsured Motorist Coverage." In essence, Frazier argues that the insurance policy was illusory. We disagree.
 {¶ 57} In this case, Pacific provided the insured, i.e. namely Applied Industrial and under Scott-Pontzer, its employees, what was contracted for, to wit limited UM coverage. That is, Applied Industrial paid premiums to Pacific and in exchange, Pacific provided an interstate insurance policy which limited UM coverage depending upon the state UM law in effect at the time the policy was issued. Because Ohio law did not require UM coverage and provided that insureds in fact, may reject such coverage, any auto "you" own, which is licensed or principally garaged in Ohio is not a covered auto. Therefore, the interstate policy precluded UM coverage in Ohio. This does not mean, however that the coverage the policy purported to provide was merely illusory. We reject Frazier's contention and find that the exclusion was enforceable.
 {¶ 58} Furthermore, we hereby incorporate our above analysis regarding the other owned exclusion and the scope of R.C. 3937.18 and find that the other owned auto exclusion is valid and enforceable.
 {¶ 59} Regarding the CIGNA umbrella policy, the policy provides coverage to "Any person * * * included as an Additional Insured in the UNDERLYING INSURANCE and for the full limits of liability shown therein,but only to the extent that such insurance is afforded said person * * *in the UNDERLYING INSURANCE." [Emphasis added.] Having found that the underlying policy does not afford coverage to Megan Frazier, there is no coverage available to Megan Frazier in the CIGNA umbrella policy.
Judgment affirmed.
KENNETH A. ROCCO, A.J., and ANTHONY O. CALABRESE, JR., J., concur.
[1] The parents of decedent, Megan Frazier: Sally Frazier, individually and as the representative of the Estate of Megan Frazier, and William Frazier.
[2] Initially, we note that an umbrella policy provides excess coverage beyond an insured's primary policies. Midwestern Indemnification Co. v.Craig (1995), 106 Ohio App.3d 158, 164. Frazier contends that the Umbrella Policy should provide coverage based on the Insuring Agreements terms that "we will pay those sums that the `insured' becomes legally obligated to pay as damages in excess of `underlying insurance', or of the `self-insured retention' when no `underlying insurance' applies. [Emphasis added.] Frazier concedes that the declarations page show that there is no self-insured retention in this policy. Presumably, Frazier asks this court to read the insuring agreement to mean that coverage exists when "no underlying insurance applies," thereby ignoring the fact that that phrase modifies "self-insured retention." We decline to do so.